**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MEGAN VISE,

Plaintiff,

v. No. 1:25-cv-0844 SMD/JHR

LOUISIANA HOTEL CORP.,
d/b/a Sheraton Uptown Albuquerque,

Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Megan Vise ("Vise") and Defendant Louisiana Hotel Corporation ("LHC") entered into an employment contract. The contract contained an arbitration provision that requires the parties to arbitrate any disputes arising out of Vise's employment. After LHC terminated Vise's employment, Vise filed a lawsuit in federal court for discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213. LHC now moves the Court to compel arbitration. Doc. 13.

Having considered the parties' arguments and the relevant law, the Court finds the parties did not form an enforceable contract because LHC reserved the right to unilaterally modify the contract, including the arbitration provision, which renders its promise illusory under New Mexico law. Alternatively, even if the parties formed a valid contract, LHC's ability to unilaterally modify the arbitration agreement is substantively unconscionable and the Court declines to enforce it. The Court therefore **DENIES** the motion to compel arbitration.

## I. Factual Background

LHC, doing business as Sheraton Uptown Albuquerque, extended an Offer of Employment

to Vise on December 8, 2023. *See* Doc. 18-C at 31.[1] Vise accepted and began working for LHC as the Sales and Catering Coordinator. *See id.* On January 18, 2024, LHC extended an updated Offer of Employment to Vise (the 2024 Contract). *See* Doc. 13-1. The parties considered the 2024 Contract, which outlined a base salary of $50,000.00 per year for Vise's work in the position of Sales Manager, to be a promotion. *See id.* at 1; *see also* Docs. 18 at 3 (asserting that the 2024 Contract "describ[ed] a promotion to Sales Manager"); 18-A at 17 ¶ 7 (affirming she understood the 2024 Contract to be a promotion); 26 at 2.[2]

The 2024 Contract contained an Arbitration Agreement (the "Arbitration Agreement"). In relevant part, the Arbitration Agreement provided:

> **Arbitration**. This Agreement is governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.). This Agreement applies to any dispute arising out of or related to Team Member's . . . employment with the Company . . . or termination of employment . . . and survives after the employment relationship terminates. Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law . . . . Except as otherwise stated in this Agreement, you and the Company agree that any legal dispute or controversy covered by this Agreement, or arising out of, relating to, or concerning the validity, enforceability or breach of this Agreement, shall be resolved by binding arbitration in accordance with the American Arbitration Association[3] [sic] ("AAA") then in effect, and not by court or jury trial, to be held (unless the parties agree in writing otherwise) within 45 miles of where you are or were last employed by the Company. . . .
>
> Except as it otherwise provides, this Agreement also applies, without limitation, to disputes . . . arising out of or related to . . . the employment relationship or the termination of that relationship, . . . termination, retaliation, discrimination or harassment and claims arising under the . . . Americans With Disabilities Act . . .

---

[1] The Court cites to Vise's brief and exhibits using the CM/ECF pagination rather than to the internal pagination.

[2] Vise disputes the authenticity of the 2024 Contract. *See* Doc. 18 at 1–2, 6. Curiously, LHC did not submit a declaration to establish foundation for the 2024 Contract, which LHC attached to its motion. *See* Docs. 13-1; 26. Given that the Court will deny the motion to compel for other reasons, the Court need not reach the issue of authenticity.

[3] LHC asserts that the 2024 Contract applied the "Employment Arbitration Rules of the American Arbitration Association" to any disputes. *See* Doc. 13 at 2, 5. LHC is incorrect. The parties' *2023* contract mentioned the Employment Arbitration Rules, *see* Doc. 18-C at 32; the parties' 2024 Contract did not mention a specific set of rules, *see* Doc. 13-1 at 3.

> and all other federal or state legal claims arising out of or relating to your employment or the termination of employment . . . .
>
> **Enforcement of this Agreement.** This Agreement replaces all prior agreements regarding the arbitration of disputes and is the full and complete agreement relating to the formal resolution of disputes covered by this Agreement . . . .

Doc. 13-1 at 3–5.

Following a brief section with information about the workers' compensation policy, the 2024 Contract concluded with information about LHC's Team Member Handbook and language relevant to contract modifications.

> **TEAM MEMBER HANDBOOK**
>
> In addition to this Agreement, you acknowledge that you have also received a copy of the most recently updated 2023 Team Member Handbook, which sets out the Company's policies. You understand and agree that your employment is subject to your compliance with the provisions of the Team Member Handbook and that the Team Member Handbook may be revised by the Company from time to time.
>
> This Agreement is intended to be a final and complete expression of the terms of your employment, in addition to the policies set forth in the Team Member Handbook. The Company reserves the right to change its policies at its sole discretion at any time, including your hours, wages, benefits and working conditions. You also understand and agree that no manager or supervisor or other third party, has the authority to alter, modify or amend the terms or conditions of your employment as set forth herein, including, but not limited to the provision that your employment is at-will. You agree that the terms contained in this Agreement shall replace and supersede any discussions you may have had with any person acting or purporting to act on behalf of the Company. Any modifications to the terms and conditions set forth in this Agreement (other than revisions to the Team Member Handbook) must be confirmed in writing and signed by the Senior Vice President of Human Resources.
>
> Please indicate your acceptance and understanding of the terms of this Agreement, including but not limited to your at-will employment and, absent your provision of a written objection to arbitration, your willingness and agreement to pursue arbitration as your exclusive remedy, by signing below. If you have any questions or require clarification regarding any of the items listed above, please discuss and resolve those with me prior to signing below.

*Id.* at 5–6. Both Vise and a representative of LHC signed the 2024 Contract and dated it January

18, 2024. *See id.* at 6.

Vise alleges that she has multiple disabilities. *See* Doc. 1 ¶ 11. She asserts that she "disclosed her conditions to her supervisor and [Human Resources] and regularly communicated about her medical appointments." *See id.* ¶ 12. In October 2024, Vise "experienced a visible allergic reaction . . . and was allowed to continue working without medical assessment or accommodations." *See id.* ¶ 13. She states that rather than "offering ADA support, management scrutinized [her] emotional state and interactions." *See id.* ¶ 14. Eventually, Vise "was sent home without discipline on October 30 and 31, 2024," and was terminated on November 1, 2024. *See id.* ¶ 15. Vise alleges that LHC "failed to initiate the ADA-required interactive process or provide reasonable accommodations." *See id.* ¶ 19.

Vise filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *See id.* ¶ 7 (citation omitted). On May 30, 2025, the EEOC issued a Determination and Notice of Right to Sue. *See id.* ¶ 7 & at 6. Vise filed this lawsuit on August 28, 2025, bringing claims for discrimination, failure to accommodate, and retaliation under the ADA. *See id.* ¶¶ 21–29. LHC filed its Motion to Compel Arbitration and Stay Proceedings on November 2, 2025. *See* Doc. 13. The motion is fully briefed. *See* Docs. 18; 26.[4]

## II. Legal Standards

"Under the Federal Arbitration Act (FAA), a pre-dispute agreement to arbitrate is 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Salazar v. Citadel Commc'ns Corp.*, 90 P.3d 466, 469 (N.M. 2004) (quoting 9

---

[4] On the same day that LHC filed its reply brief, Vise filed an "amended" response brief. *See* Docs. 26; 29. The amended response includes pages that Vise omitted from the original response. *Compare* Doc. 18, *with* Doc. 29. Vise did not seek leave of the Court to file the amended response, and the Court did not consider it in analyzing the motion to compel.

U.S.C. § 2 (2000)). "In order to compel arbitration, the parties must have entered into a valid agreement to arbitrate." *Clark v. UnitedHealth Grp., Inc.*, No. 1:13-cv-0372 MV/CG, 2018 WL 2932735, at *2 (D.N.M. June 12, 2018), *R&R adopted*, 2018 WL 3539817 (D.N.M. July 23, 2018) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). The Court applies state contract law to determine whether the arbitration agreement is valid. *See id.* (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Salazar*, 90 P.3d at 469 (citing *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)).

The Court treats this motion much as it does a motion for summary judgment. *See Oldham v. Nova Mud, Inc.*, No. 2:20-cv-1166 MIS/GBW, 2023 WL 4826502, at *2 (D.N.M. July 27, 2023) (citing *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 612 (10th Cir. 2014)); *Guarriello v. Asnani*, No. 1:19-cv-1184 WJ/CG, 2020 WL 7495603, at *3 (D.N.M. Dec. 21, 2020) (citing *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012)). As the party moving to compel arbitration, LHC "bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement . . . ." *See Oldham*, 2023 WL 4826502, at *2 (quoting *Bellman*, 563 F. App'x. at 612); *see also Flemma v. Halliburton Energy Servs., Inc.*, 303 P.3d 814, 822–23 (N.M. 2013) (citation omitted). "[I]f it does so, the burden shifts to [Vise] to raise a genuine dispute of material fact regarding the existence of an agreement." *See Oldham*, 2023 WL 4826502, at *2 (quoting *Bellman*, 563 F. App'x. at 612).

## III. Analysis

As outlined below, the Court finds that the 2024 Contract was illusory because it gave LHC the unilateral right to modify it at any time. Because the contract is illusory, it fails for lack of consideration. Alternatively, LHC's unilateral right of modification is substantively unconscionable. Regardless, the motion to compel must be denied.

**A. The 2024 Contract is illusory.**

New Mexico law requires that "a valid agreement to arbitrate must be supported by an offer, an acceptance, consideration, and mutual assent." *Clark*, 2018 WL 2932735, at *2 (citing *Flemma*, 303 P.3d at 822). Moreover, "the arbitration agreement must not be illusory or unconscionable." *Laurich v. Red Lobster Rests., LLC*, 295 F. Supp. 3d 1186, 1202 (D.N.M. 2017) (citing *Salazar*, 90 P.3d at 469).

LHC asserts that the 2024 Contract, which includes the Arbitration Agreement, "satisfies all requirements for contract formation under New Mexico law." Doc. 13 at 5 (citation omitted). It maintains that the 2024 Contract demonstrates a valid offer of employment, consideration (employment, salary, and benefits in exchange for Vise's work as a Sales Manager), acceptance as shown through Vise's signature, and mutual assent as evidenced by the language binding both Vise and the Company to resolve disputes through binding arbitration. *See id.* Vise argues that LHC cannot show the existence of a valid arbitration agreement for several reasons, including lack of consideration and mutual assent. *See* Doc. 18 at 7–9.

On June 12, 2026, the Court ordered supplemental briefing on the issue of whether the contractual language gave LHC "the unfettered right to alter the arbitration agreement's existence." Doc. 38 at 1 (quoting *Archuleta v. Triad Nat'l Sec. LLC*, No. 1:21-cv-1030 KWR/SCY, 2021 WL 5177474, at *5 (D.N.M. Nov. 8, 2021)). The parties responded. Docs. 41–42. The Court finds this issue is dispositive.

New Mexico contract law holds that "an agreement that is subject to unilateral modification or revocation is illusory and unenforceable." *Salazar*, 90 P.3d at 469 (citing *Bd. of Educ. v. James Hamilton Constr. Co.*, 891 P.2d 556, 561 (N.M. Ct. App. 1994)). "This principle applies equally to agreements to arbitrate." *Id.* (citing *Heye v. Am. Golf Corp.*, 80 P.3d 495, 499 (N.M. Ct. App.

2003)). "The party that reserves the right to change the agreement unilaterally, and at any time, has not really promised anything at all and should not be permitted to bind the other party." *Id.*

Here, the relevant modification language provides:

> The Company reserves the right to change its *policies* at its sole discretion at any time, including your hours, wages, benefits and working conditions. You also understand and agree that no manager or supervisor or other third party, has the authority to alter, modify or amend the terms or conditions of your employment as set forth herein, including, but not limited to the provision that your employment is at-will. . . . Any modifications to the terms and conditions set forth in *this Agreement* (other than revisions to the *Team Member Handbook*) must be confirmed in writing and signed by the Senior Vice President of Human Resources.

Doc. 13-1 at 5–6 (emphasis added). LHC argues that the modification language reaches only the "policies" contained within the Team Member Handbook, which are set out in a separate document. *See* Doc. 41 at 1–3 (discussing Doc. 13-1 at 5–6). LHC disagrees that the modification provision extends to the "Agreement"—a term LHC acknowledges encompasses the entire 2024 Contract. *See* Doc. 41 at 2 (noting that the 2024 Offer or Contract is "referred to interchangeably as the 'Agreement'").

The Court agrees that the term "policies" refers to the Team Member Handbook, and the term "this Agreement" refers to the 2024 Contract.[5] In fact, the 2024 Contract takes great pains to distinguish "[t]his Agreement" from the Handbook policies. The first paragraph under the section entitled Team Member Handbook reflects the employee's acknowledgement of their receipt of "this Agreement" in addition to the "Team Member Handbook, which sets out the Company's policies." *See* Doc. 13-1 at 5 (also noting that "[t]his Agreement is intended to be a final and

---

[5] To be fair, there is some ambiguity on this point. In the 2024 Contract, the section labeled Arbitration repeatedly refers to the Arbitration provision as "this Agreement." *See* Doc. 13-1 at 3–4. Thus, the Court would also find that the language reserving to LHC the right to modify "the terms and conditions set forth in this Agreement" applies directly to the Arbitration Agreement. *See id.* at 6. At the very least, the language points to two possible interpretations that give LHC the unilateral right to modify the 2024 Contract and/or the Arbitration Agreement without notice.

complete expression of the terms of your employment, *in addition to the policies* set forth in the Team Member Handbook.") (emphasis added).

Considering the distinction between these two terms, the Court finds that the modification provision is not limited to LHC's policies. Instead, it gives LHC the right to change its Team Member Handbook "*policies* . . . at any time," and also to modify "the terms and conditions . . . in *this Agreement*" under the specified conditions. *See id.* at 6 (emphasis added). The Court reads that language to mean that LHC may modify *any term* or condition of the Agreement—the 2024 Contract—simply by providing a written notice signed by the Senior Vice President of Human Resources. This includes, of course, the Arbitration Agreement, which LHC agrees is a term of the 2024 Contract. *See* Doc. 41 at 1.

Strangely, in arguing that this language applies only to terms in the Team Member Handbook, LHC contends that the provision "illustrates what may be changed in the Handbook/policies, referring to certain conditions of employment, including an employee's 'hours, wages, benefits and working conditions.'" Doc. 41 at 2–3 (quoting Doc. 13-1 at 5). Yet Vise's hours, wages, and benefits are spelled out in the 2024 Contract, not—as far as the Court knows—in the Team Member Handbook. *See* Doc. 13-1 at 1. Thus, LHC's attempt to portray the provision as applying only to changes in the Handbook/policies falls flat. *See* Doc. 41 at 2–3.

LHC spends much of its supplemental brief attempting to distinguish guiding authority on the basis that the modification language in the parties' 2024 Contract applies only to the policies in the Team Member Handbook and does not reach the Arbitration Agreement. *See id.* at 3–6. For example, LHC discusses *Piano v. Premier Distributing Co.*, 107 P.3d 11 (N.M. Ct. App. 2004), a case the Court cited in its Order for Supplemental Briefing. *See* Docs. 38 at 2; 41 at 5. There, the employment contract provided that "[t]he Company retains the right to add, change or delete

wages, benefits, policies and all other working conditions at any time (except the policy of 'at-will employment' and Arbitration Agreement, which may not be changed, altered, revised or modified unless in writing and signed by the Owner of the Company)." 107 P.3d at 13. LHC finds it critical that the contract in *Piano* explicitly provided that the arbitration agreement could be modified in a signed writing. *See* Doc. 41 at 5. "LHC's reservation clause[,]" it argues, "only reaches its 'policies,' not the 2024 Offer/Agreement, which is where the Arbitration provision is." *See id.* (citing Doc. 13-1 at 6.) Again, however, the Court disagrees that LHC's reservation of rights touched only the Team Member Handbook policies, as the provision later allows LHC to modify the *Agreement's* terms and conditions. *See* Doc. 13-1 at 6. Consequently, LHC's argument on this issue is unavailing.

LHC also points out the contractual language that "states that third parties cannot unilaterally amend or alter the terms of the 2024 Offer/Agreement." *Id.* at 6. The existence of "language barring third-party modification[,]" argues LHC, must indicate that "the Senior Vice President's signature simply prescribes the form a modification must take, . . . it does not create the power for the Senior Vice President . . . to unilaterally make one." *See id.* The Court struggles to follow this logic and finds that at the very least, the two sentences create ambiguity and will be construed against LHC. *See Syed v. Paramount Prince Rehab.*, *LP*, No. A-1-CA-37720, 2022 WL 1633875, at *4 (N.M. Ct. App. May 23, 2022) ("we strictly construe [the] contract against the party who drafted the contract in order to protect the rights of the party who did not draft it") (quotation omitted).

The New Mexico Court of Appeals recently re-examined this issue and came to a conclusion in line with the authority the Court cited in its Order for Supplemental Briefing. *See Steele v. Galles Chevrolet*, No. A-1-CA-39168, 2023 WL 2495547 (N.M. Ct. App. Mar. 14, 2023).

There, the parties' employment contract gave Galles the right to change "any and all policies or practices . . . at any time . . . (except the policy of 'at-will employment' and Arbitration Agreement, which may not be changed, altered, revised or modified without a writing signed by the President of the Company)." *See id.* at *2. The court held that the company's ability to modify the arbitration agreement, tempered only by the limitation that such modification be in a writing signed by the company's president, "render[ed] Galles's promise to arbitrate illusory . . . ." *See id.* (discussing *Piano v. Premier Distrib. Co.*, 107 P.3d 11, 15 (N.M. Ct. App. 2004)); *see also Guarriello*, 2020 WL 7495603, at *2, 5.

Similarly, here, "[a]ny modifications to the terms and conditions set forth in this Agreement (other than revisions to the Team Member Handbook[6]) must be confirmed in writing and signed by the Senior Vice President of Human Resources." Doc. 13-1 at 6. The Court construes this language to mean that LHC retains the ability to unilaterally modify the 2024 Contract, including the Arbitration Agreement. As in *Steele*, the Court finds this language makes LHC's promise to arbitrate illusory. *See Steele*, 2023 WL 2495547, at *2 (citation omitted).

LHC argues that even if the Court finds a unilateral right of modification that results in an illusory promise, it is "cured" because Vise's claim has already accrued. *See* Doc. 41 at 6. LHC builds this theory on reasoning from two decisions: *Sisneros v. Citadel Broadcasting Co.* and *Flemma v. Halliburton Energy Service*. Its reading of those decisions, however, misses the mark. In *Sisneros*, the arbitration agreement allowed the company the right to amend or terminate the policy, "except that any termination or amendment will not apply to claims which accrued before the amendment or termination." *See* 142 P.3d 34, 43 (N.M. Ct. App. 2006). In other words, "once

[6] Revisions to the Team Member Handbook need not be in writing and signed by the Senior Vice President because LCH already "reserve[d] the right to change its policies at its sole discretion at any time . . . ." *See* Doc. 13-1 at 5–6.

an employee's claim accrues, [the company was] bound to its agreement to arbitrate the dispute." *Id.* In *Flemma v. Halliburton Energy Services*, the arbitration agreement allowed Halliburton to amend the agreement, but not "after arbitration proceedings are initiated . . . ." 303 P.3d at 823. The New Mexico Supreme Court held that this language fell short of the *Sisneros* standard, because *initiation* of a claim is far different than *accrual* of a claim. Thus, the arbitration agreement in *Flemma* was "illusory since Halliburton retain[ed] the right to unilaterally amend the agreement's terms after an employee's claim ha[d] accrued." *Id.* at 822. Here, there is no language limiting the timing of LHC's right to modify, and the fact that it chose not to modify the agreement cannot retroactively cure an invalid contract. *See, e.g.*, *Guarriello*, 2020 WL 7495603, at *5 (finding that where arbitration agreement was "modifiable at will by" the employer, the agreement was illusory and employer "may not enforce such an agreement"). Because LHC retained the unilateral right to modify at any time, the agreement is illusory and unenforceable.

**B. The 2024 Contract is substantively unconscionable.**

Alternatively, even if LHC's unilateral right of modification did not invalidate the arbitration agreement for lack of consideration, it would be substantively unconscionable. *See, e.g.*, *Sydney Counce v. Dreamspring*, No. A-1-CA-39748, 2022 WL 2161429, at *1 (N.M. Ct. App. June 15, 2022) (noting that unconscionability "is a means of invalidating an *otherwise valid* contract" (quotation and citation omitted). In *Flemma*, the New Mexico Supreme Court found "the arbitration agreement to be substantively unconscionable because it [was] unreasonably one-sided" by allowing the employer the unilateral right of modification. *See* 303 P.3d at 821. The agreement allowed the employer "to amend its terms even after a claim accrues and before any proceeding is initiated." *See id.* at 822; *see also Guarriello*, 2020 WL 7495603, at *6–7 (relying on *Flemma* to find the arbitration agreement substantively unconscionable where the employer

had "an unqualified amount of discretion" to amend the terms); *Clark*, 2018 WL 2932325, at *7–8 (same).

The same is true here. The contractual language allowing LHC to modify the terms and conditions of the Agreement places no restrictions on the timing of such modification. The only limitation is that the modifications must be in writing and signed by the Senior Vice President. *See* Doc. 13-1 at 6. As in *Flemma*, *Guarriello*, and *Clark*, this language gives LHC the option of amending the arbitration agreement after an employee is terminated but before arbitration begins, "effectively allowing it to 'change the rules of the game just before it starts.'" *See Clark*, 2018 WL 2932735, at *7 (quoting *Flemma*, 303 P.3d at 822). The Court finds the agreement is substantively unconscionable.

Finally, LHC argues that "should any portion be deemed unenforceable, the remedy is severance [of the modification language], not invalidation" of the Arbitration Agreement as a whole. Doc. 41 at 7 (citing *Padilla v. State Farm Mut. Auto. Ins. Co.*, 68 P.3d 901, 909 (N.M. 2003)). As the *Clark* court noted, however, "the New Mexico Supreme Court has declined to sever clauses that define the parties' arbitration rights." 2018 WL 2932735, at *8 (discussing *Cordova v. World Fin. Corp. of N.M.*, 208 P.3d 901, 911 (N.M. 2009); *Rivera v. Am. Gen. Fin. Servs., Inc.*, 259 P.3d 803, 819 (N.M. 2011)). Rather, "courts in similar situations have found [it] appropriate" to sever unenforceable arbitration agreements "in their entirety . . . ." *See Cordova*, 208 P.3d at 911 (citations omitted); *see also Steele*, 2023 WL 2495547, at *4 (finding that no valid arbitration agreement was formed because employer retained unilateral right to modify the agreement and declining to excise the offending language in order to find the agreement was supported by consideration). The Court does the same here.

For the reasons outlined in this Opinion, the Court finds LHC's promise to arbitrate is

illusory and invalid. Alternatively, the agreement is substantively unconscionable and unenforceable. On either basis, the Court will deny the motion to compel.

**THEREFORE**,

**IT IS ORDERED** that the Motion to Compel, Doc. 13, is **DENIED**.

SARAH M. DAVENPORT
UNITED STATES DISTRICT JUDGE